UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMCASCO INSURANCE COMPANY and )
EMPLOYERS MUTUAL CASUALTY )
COMPANY, )
 )
       Plaintiffs, )
 )
  v. )
 )
PENINSULA TOWNSHIP; WINERIES OF )   Case No. 25 cv 1081
THE OLD MISSION PENINSULA )
(WOMP) ASSOC.; BOWERS HARBOR )
VINEYARD & WINERY, INC.; BRYS )
WINERY LC; CHATEAU GRAND )
TRAVERSE, LTD.; CHATEAU )
OPERATIONS, LTD.; GRAPE HARBOR, )
INC.; MONTAGUE DEVELOPMENT LLC; )
OV THE FARM LLC; TABONE )
VINEYARDS, LLC; TWO LADS LLC; )
VILLA MARI LLC; WINERY AT BLACK )
STAR FARMS LLC; and PROTECT THE )
PENINSULA, INC., )
 )
      Defendants. )

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COME Plaintiffs, EMCASCO Insurance Company and Employers Mutual Casualty

Company (collectively, "EMC"), by and through their attorneys, Traub Lieberman Straus &

Shrewsberry LLC, and for their Complaint for Declaratory Judgment against Defendants Peninsula

Township (the "Township"), Wineries of The Old Mission Peninsula Association ("WOMP"),

Bowers Harbor Vineyard & Winery, Inc. ("Bowers Harbor"), Brys Winery, LLC ("Brys"), Chateau

Grand Traverse, Ltd. ("Grand Traverse"), Chateau Operations, Ltd. ("Chateau Operations"), Grape

Harbor, Inc. ("Grape Harbor"), Montague Development, LLC ("Montague"), OV The Farm, LLC

("OV"), Tabone Vineyards, LLC ("Tabone"), Two Lads, LLC ("Two Lads"), Villa Mari LLC

("Villa Mari"), Winery at Black Star Farms, LLC ("Black Star"), and Protect The Peninsula, Inc. ("PTP"), and alleges as follows:

## NATURE OF ACTION

1.     Plaintiff EMCASCO Insurance Company is a corporation engaged in the business of insurance that issued a series of consecutive Commercial General Liability policies of insurance to Defendant Peninsula Township for one-year policy periods including July 1, 2019, to July 1, 2020, and April 15, 2020, to April 15, 2021.  Plaintiff Employers Mutual Casualty Company is also a corporation engaged in the business of insurance that issued a series of separate, consecutive Linebacker Public Officials and Employment Practices Liability policies and Commercial Umbrella policies to Peninsula Township for one-year policy periods including July 1, 2019, to July 1, 2020, and April 15, 2020, to April 15, 2021, respectively.  Plaintiffs EMCASCO Insurance Company and Employers Mutual Casualty Company, unless otherwise specified, will be collectively referred to as "Plaintiffs" or "EMC."

2.     EMC brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 *et seq*. and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration with respect to its or their duties to defend and/or indemnify the Township under the EMC policies referenced above in connection with an underlying lawsuit styled, *Wineries of the Old Mission Peninsula (WOMP) Assoc., a Michigan Nonprofit Corporation et al. v. Peninsula Township*, Case No. 1:20-cv-01008, filed in the U.S. District Court for the Western District of Michigan (the "Underlying Lawsuit").  EMC seeks a declaration that no coverage is available under the subject EMC policies and that Plaintiffs have no obligation to defend or indemnify the Township in connection with the Underlying Lawsuit and/or the resulting Judgment against the Township therein.

2

3.      There exists an actual and justiciable controversy among the parties concerning their respective rights, duties, and obligations under and pursuant to the EMC policies.  Plaintiffs contend that there is no obligation to defend or indemnify the Township in connection with the claims asserted in the Underlying Lawsuit and resulting Judgment based on the terms of the EMC policies and applicable law.

4.      Plaintiffs have no adequate remedy at law and, therefore, desire a judicial determination of its or their rights and duties in accordance with the EMC policies.  A judicial declaration is necessary and appropriate at this time so that Plaintiffs may ascertain its rights and duties with respect to defense and indemnity under the EMC policies for the Underlying Lawsuit and resulting Judgment entered in that action.

## JURISDICTION AND VENUE

5.      Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

6.      Venue is appropriate in this district pursuant to 28. U.S.C. § 1391(a), in that the Underlying Lawsuit is pending in this district and a substantial part of the events giving rise to this claim occurred in this district.

## PARTIES

7.      Plaintiff EMCASCO Insurance Company is a corporation organized under the laws of Iowa with its principal place of business in Des Moines, Iowa, and therefore, is a citizen of Iowa.

8.      Plaintiff Employers Mutual Casualty Company is a corporation organized under the laws of Iowa with its principal place of business in Des Moines, Iowa, and therefore, is a citizen of Iowa.

9.      Defendant Peninsula Township is a civil township located in Grand Traverse County, Michigan, with its office located in Traverse City, Michigan, and therefore, is a citizen of Michigan.

10.     Defendant WOMP is a corporation organized under the laws of Michigan with its principal place of business in Grand Traverse County, Michigan, and therefore, is a citizen of Michigan.

11.     Defendant Bowers Harbor is a corporation organized under the laws of Michigan with its principal place of business in Grand Traverse County, Michigan, and therefore, is a citizen of Michigan.

12.     Defendant Brys is a limited liability company organized under the laws of Michigan with its principal place of business in Grand Traverse County, Michigan. The members of Brys include Walter Brys and Eileen Brys who are residents and citizens of Michigan domiciled in Grand Traverse County, Michigan.  Brys, therefore, is a citizen of Michigan. Upon diligent search, Plaintiffs are unable to identify any other members of Brys who are residents or citizens of Iowa.

13.     Defendant Grand Traverse is a corporation organized under the laws of Michigan with its principal place of business in Grand Traverse County, Michigan, and therefore, is a citizen of Michigan.

14.     Defendant Chateau Operations is a corporation organized under the laws of Michigan with its principal place of business in Grand Traverse County, Michigan, and therefore, is a citizen of Michigan.

15.    Defendant Grape Harbor is a corporation organized under the laws of Michigan with its principal place of business in Grand Traverse County, Michigan, and therefore, is a citizen of Michigan.

16.    Defendant Montague is a limited liability company organized under the laws of Michigan with its principal place of business in Grand Traverse County, Michigan.  The managing member of Montague is Bryant E. Montague who is a resident and citizen of North Carolina, domiciled in Raleigh, North Carolina. Montague, therefore, is a citizen of Michigan and North Carolina. Upon diligent search, Plaintiffs are unable to identify any other members of Montague who are residents or citizens of Iowa.

17.    Defendant OV is a limited liability company organized under the laws of Michigan with its principal place of business in Grand Traverse County, Michigan.  The managing member of OV is Todd Oosterhouse who is a resident and citizen of Michigan, domiciled in Grand Traverse County, Michigan.   OV, therefore, is a citizen of Michigan. Upon diligent search, Plaintiffs are unable to identify any other members of OV who are residents or citizens of Iowa.

18.    Defendant Tabone is a limited liability company organized under the laws of Michigan with its principal place of business in Grand Traverse County, Michigan.  The managing member of Tabone is Mario Tabone who is a resident and citizen of Michigan, domiciled in Wayne County, Michigan.   Tabone, therefore, is a citizen of Michigan. Upon diligent search, Plaintiffs are unable to identify any other members of Tabone who are residents or citizens of Iowa.

19.    Defendant Two Lads is a limited liability company organized under the laws of Michigan with its principal place of business in Grand Traverse County, Michigan.  The members of Two Lads include Christopher Baldyga who is a resident and citizen of Michigan, domiciled in Grand Traverse County, Michigan.  Two Lads, therefore, is a citizen of Michigan.  Upon diligent

search, Plaintiffs are unable to identify any other members of Two Lads who are residents or citizens of Iowa.

20.    Defendant Villa Mari is a limited liability company organized under the laws of Michigan with its principal place of business in Grand Traverse County, Michigan.  The members of Villa Mari include Marty Lagina who is a resident and citizen of Michigan, domiciled in Grand Traverse County, Michigan. Villa Mari, therefore, is a citizen of Michigan. Upon diligent search, Plaintiffs are unable to identify any other members of Villa Mari who are residents or citizens of Iowa.

21.    Defendant Black Star is a limited liability company organized under the laws of Michigan with its principal place of business in Grand Traverse County, Michigan. The members of Black Star include Sherri Fenton and Lee Lutes, who are residents and citizens of Michigan, domiciled in Grand Traverse County, Michigan.  Black Star, therefore, is a citizen of Michigan. Upon diligent search, Plaintiffs are unable to identify any other members of Black Star who are residents or citizens of Iowa.

22.    Protect the PTP is a corporation organized under the laws of Michigan with its principal place of business in Grand Traverse County, Michigan, and therefore, is a citizen of Michigan.

23.    Plaintiffs refer to Defendants WOMP, Bowers Harbor, Brys, Grand Traverse, Chateau Operations, Grape Harbor, Montague, OV, Tabone, Two Lads, Villa Mari, and Black Star collectively herein as the "Wineries" or the "Winery Defendants," unless otherwise specified.  The Winery Defendants are plaintiffs in the Underlying Lawsuit, and with Defendant PTP are joined as Defendants herein as necessary parties so that they may be bound by the judgment entered in

this case.  If Defendants execute a stipulation agreeing to be bound by any judgment entered herein, EMC will voluntarily dismiss Defendants from this action.

**THE UNDERLYING LAWSUIT**

24.     On October 21, 2020, the Winery Defendants filed an original Complaint asserting various allegations against the Township in relation to the Township's ordinances which govern the Wineries styled *Wineries of the Old Mission Peninsula (WOMP) Assoc., a Michigan Nonprofit Corporation et al. v. Peninsula Township et al.*, Case No. 1:20-cv-01008-PLM-RSK, in the United States District Court for the Western District of Michigan.  A true and correct copy of the original Complaint is attached hereto as **Exhibit A**.

25.     On January 4, 2021, the Winery Defendants filed a First Amended Complaint likewise asserting various allegations in relation to Township's restrictions and regulations in the Peninsula Township Zoning Ordinance (the "PTZO") that govern the Wineries and which allegedly violate the Wineries' constitutional and due process rights (hereinafter, the "Underlying Lawsuit"). A true and correct copy of the Amended Complaint is attached hereto as **Exhibit B**.

26.     Specifically, the sections of the PTZO that applied to the Winery Defendants were Section 6.2.7(19), which governed Farm Processing Facilities; Section 8.7.3(10), which governed Winery-Chateaus; and Section 8.7.3(12), which governed Remote Winery Tasting Rooms (collectively, the "Ordinances"). Whether a property constituted a Farm Processing Facility, Winery-Chateau, or Remote Winery Tasting Room depended upon how the property is zoned.

27.     The restrictions in the Ordinances that the Winery Defendants challenged include: regulations of advertising, regulations of bar and restaurant operations, vagueness of the term "Guest Activity," limitations on hours of operation, prohibition of hosting events such as weddings and family reunions, prohibition of amplified music, and regulations requiring the Winery

Defendants to use a certain percentage of Old-Mission-Peninsula-grown grapes and ingredients in producing wine, among other restrictions.

28.     The Winery Defendants asserted the following causes of action against the Township:  (i) facial challenge to violation of Freedom of Speech, Freedom of Expression and Free Exercise under the First and Fourteenth Amendments; (ii) as-applied challenge to violation of Freedom of Speech under the First and Fourteenth Amendments; (iii) violation of Freedom of Association under the First and Fourteenth Amendments; (iv) violation of Due Process; (v) Dormant Commerce Clause (discrimination against interstate commerce); (vi) Dormant Commerce Clause (excessive burden on interstate commerce); (vii) regulatory taking (Fifth and Fourteenth Amendment); (viii) state law pre-emption; (ix) violation of the Michigan Zoning Enabling Act; and (x) injunctive relief. *See* Exh. B.

29.     Prior to trial, the District Court in the Underlying Lawsuit ruled that certain sections of the PTZO violated the Dormant Commerce Clause because they require Farm Processing Facilities and Winery-Chateaus to purchase a certain percentage of grapes from Peninsula Township farmers.

30.     The District Court also ruled that the term "Guest Activity" was unconstitutionally vague and must be stricken from the PTZO.  The District Court ruled that certain sections of the PTZO compelled speech because they require the Winery Defendants to promote Township agriculture at all Guest Activities and that certain sections of the PTZO were unconstitutional prior restraints on speech because they required the Winery Defendants to seek Township approval before hosting a meeting of a 501(c)(3) non-profit group or agricultural related groups while lacking definite criteria to make an approval determination. The District Court also ruled that certain sections of the PTZO were pre-empted by Michigan law.

31.    The District Court conducted an 11-day bench trial in or around October 2024 on the remaining claims in the Underlying Lawsuit.

32.    On July 7, 2025, the District Court entered an Opinion and Judgment in favor of the Winery Defendants granting the Wineries millions of dollars in damages but declining to issue injunctive relief (the "Judgment"). True and correct copies of the July 7, 2025, Opinion and Judgment are attached hereto as **Exhibit C** and **Exhibit D**, respectively.

33.    The District Court ruled that certain challenged sections of the PTZO were unconstitutional violations of the Dormant Commerce Clause and that the term "Guest Activity" is unconstitutionally vague in violation of the Due Process Clause, and therefore, unenforceable.

34.    The Court also held certain provisions of Section 8.7.3(10) of the PTZO unconstitutionally compel speech or act as prior restraints on speech, or unconstitutionally restrain commercial speech in violation of the First Amendment. Additional provisions of Sections 6.7.2(19) and 8.7.3(12) were also held to violate the First Amendment.

35.    Finally, the District Court concluded that certain provisions of Section 8.7.3(10)(u) are preempted by Michigan law.  *See* Exh. C and Exh. D.

36.    Section 8.7.3(10) of the PTZO was enacted by Amendment 79 on November 21, 1989.

37.    Amendment 141 to the PTZO was enacted on June 21, 2004, which added subsection (u) to the existing Winery-Chateau section of 8.7.3(10).

38.    Specific instances of the Township's conduct noted in the July 7, 2025, Judgment include approving or taking action on SUP's for Grand Traverse in 1990 (subsequent SUP's being approved and amended from 1999 to 2007) and Chateau Operations in December 2004.  *See* Exh. C.

39.     The District Court specifically noted that the Township's "arbitrary enforcement" of the PTZO against the Winery Defendants took place over a period of "decades."  *See* Exh. C.

40.     With respect to damages, the District Court only awarded damages related to the Winery Defendants' inability to properly host small and large events, respectively.

41.     According to the Judgment, given the unworkable and unconstitutional PTZO and Guest Activity Uses provisions, the Winery Defendants were unable to host events in a manner consistent with reasonable business expectations over the years since its enactment. *See* Exh. C.

42.     The District Court declined to award damages under Schedules 1 (Increased Grape Costs), 3 (Closing Times), and 5 (Merchandise Sales) presented by the Winery Defendants at trial.

43.     The District Court further held that the Winery Defendants were bound by Michigan's three-year statute of limitations for injuries to persons or property, and therefore, the damages could only be awarded in relation to the time period commencing on October 21, 2017, three years prior to the filing of the original complaint, and ending on December 13, 2022, which was the date the Township repealed the PTZO.  *See* Exh. C and Exh. D.

## THE EMC POLICIES

**A.     The Commercial General Liability ("CGL") Policies**

44.     EMCASCO Insurance Company issued a Commercial General Liability Policy, policy number 6D0-75-55, to Peninsula Township as the named insured, for the period of July 1, 2019 to July 1, 2020 (the "19-20 CGL Policy").

45.     For the subsequent policy term, the policy number changed to 6D1-76-75 and the policy period changed to April 15, 2020 to April 15, 2021 (the "20-21 CGL Policy").  True and correct copies of the 19-20 and 20-21 CGL Policies are attached hereto as **Exhibit E** and **Exhibit F**, respectively.

46.     The 19-20 and 20-21 CGL Policies issued to Peninsula Township include identical or substantially similar coverage forms and endorsements, and therefore, for ease of reference are referred to collectively as the "CGL Policies" unless otherwise specified.

47.     The CGL Policies generally provide $1 million of liability coverage for each covered "occurrence" and $3 million in the aggregate, subject to the various terms, conditions, and exclusions set forth therein.  *See* Exh. E at p. 3; Exh. F at p.3.

48.     The CGL Policies provide, in relevant part, the following with respect to the liability coverage afforded therein:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

***

  **b.** This insurance applies to "bodily injury" and "Property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee"

11

authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\*\*\*

## SECTION V – DEFINITIONS

\*\*\*

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*\*\**

**17.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physical injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*\*\**

*See* Exh. E at pp. 11-26; Exh. F at pp. 12-27.

    49.    The CGL Policies are subject to an exclusion that provides, in relevant part, as follows:

    **2.**    **Exclusions**

    This insurance does not apply to:

    **a.**    **Expected Or Intended Injury**

        "Bodily injury" or "property damage" expected or intended from the standpoint of an insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*\*\**

*See* Exh. E at p. 47; Exh. F at p. 44.

**B.**    **The Linebacker Public Officials And Employment Practices Liability Policies**

    50.    Employers Mutual Casualty Company is a corporation engaged in the business of insurance that issued a Linebacker Public Officials and Employment Practices Liability Policy, policy number 6K0-75-55, to Peninsula Township as the named insured, for the period of July 1, 2019 to July 1, 2020 (the "19-20 Linebacker Policy").

51.     For the subsequent policy term, the policy number changed to 6K1-76-75 and the policy period changed to April 15, 2020 to April 15, 2021 (the "20-21 Linebacker Policy").  True and correct copies of the 19-20 and 20-21 Linebacker Policies are attached hereto as **Exhibit G** and **Exhibit H**, respectively.

52.     The 19-20 and 20-21 Linebacker Policies issued to the Township include identical or substantially similar coverage forms and endorsements, and therefore, for ease of reference are referred to collectively as the "Linebacker Policies" unless otherwise specified.

53.     The Linebacker Policies generally provide $1 million of liability coverage for each covered loss and $2 million in the aggregate, subject to the various terms, conditions, and exclusions set forth therein. *See* Exh. G at p. 3; Exh. H at p.3.

54.     The Linebacker Policies provide, in relevant part, the following with respect to the liability coverage afforded therein:

**1.     Insuring Agreement Coverage A – Public Official's Liability and Coverage B – Employment Practices Liability**

**a.     Public Officials Liability**

We will pay for "defense expense(s)" and/or those sums the insured becomes legally obligated to pay as "damages" because of a "public official's wrongful act" rendered in discharging duties on behalf of the named insured.

\*\*\*

**2.     Coverage Activation**

**a.**     We will pay "defense expense(s)" and/or "damages" excess of the deductible stated int eh Declarations provided that the "wrongful act" on which the claim is based occurs on or after the effective date shown in the Declarations and not after the endo of the policy period; and

**b.**     This insurance applies to "defense expense(s)" and/or "damages" if prior to the policy period, no insured listed under paragraph **1**. of

**Section II – Who Is An Insured** and no "employee" authorized by you to give or receive notice of a "wrongful act" or claim knew that the "wrongful act" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that damages had occurred, then any continuation, change or resumption of such "wrongful act" during or after the policy period will be deemed to have been known prior to the policy period;

c.     All claims resulting from a single "wrongful act" or a series of related "wrongful acts" shall be deemed one "wrongful act".  All such "wrongful acts" shall be deemed to have occurred at the time the first "wrongful act" took place or is alleged to have taken place.

*\*\**

## SECTION V – DEFINITIONS

*\*\**

15.     "Wrongful act" includes any of the following:

*\*\**

b.     **"Public official's wrongful act"** shall mean any of the following:

(1)     Actual or alleged errors;

(2)     Misstatement or misleading statement;

(3)     Act, omission, neglect or breach of duty by an insured;

in the discharge of organizational duties.

"Public Official's Wrongful Act(s)" does not include an "employment wrongful act."

*\*\**

*See* Exh. G at pp. 7-13; Exh. H at pp. 8-14.

55.     The Linebacker Policies are subject to an exclusion that provides, in relevant part, as follows:

5.     **Exclusions – Coverage A and Coverage B**

15

Each of the following exclusions is an absolute exclusion with no duty to defend or pay "damages" unless otherwise indicated. If both an absolute exclusion and an exclusion with a duty to defend apply, coverage for "defense expenses" is excluded and we have no duty to defend.

This insurance does not apply to:

\*\*\*

**l.    Land Use**

The direct or indirect operation of the principles of eminent domain, including but not limited to:  adverse possession; taking of property; and condemnation or inverse condemnation proceedings.

We will defend a claim against the insured for exercising its zoning or permitting duties in a land use regulatory capacity, under Exclusion 5. L, but will have no obligation to pay "damages."

\*\*\*

*See* Exh. G at pp. 8-9; Exh. H at pp. 9-10.

**C.    The Commercial Umbrella Liability Policies**

56.    Employers Mutual Casualty Company also issued a Commercial Umbrella Policy, policy number 6J0-75-55, to Peninsula Township as the named insured, for the period of July 1, 2019 to July 1, 2020 (the "19-20 Umbrella Policy").

57.    For the subsequent policy term, the policy number changed to 6J1-76-75 and the policy period changed to April 15, 2020 to April 15, 2021 (the "20-21 Umbrella Policy").  True and correct copies of the 19-20 and 20-21 Umbrella Policies are attached hereto as **Exhibit I** and **Exhibit J**, respectively.

58.    The 19-20 and 20-21 Umbrella Policies issued to the Township include identical or substantially similar coverage forms and endorsements, and therefore, for ease of reference are referred to collectively as the "Umbrella Policies" unless otherwise specified.

59.     The Umbrella Policies generally provide $5 million of liability coverage for each covered occurrence and $5 million in the aggregate, subject to the various terms, conditions, and exclusions set forth therein. *See* Exh. I at p. 3; Exh. J at p.3.

60.     The Umbrella Policies provide, in relevant part, the following with respect to the liability coverage afforded therein:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

    **a.**     We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:

***

    **b.**     This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

    **c.**     This insurance applies to "bodily injury" and "property damage" only if:

17

    **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)**    Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**d.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**e.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

***

**SECTION V – DEFINITIONS**

***

**3.**    "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

\*\*\*

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

**18.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physical injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

**19.**    "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

**20.**    "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrence" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrence" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

\*\*\*

**23.**    "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternative dispute method entered into with our consent or the "underlying insurer's" consent.

**24.**    "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

***

*See* Exh. I at pp. 8-25; Exh. J at pp. 9-26.

61.    The Umbrella Policies are subject to an exclusion that provides, in relevant part, as follows:

**2.    Exclusions**

This insurance does not apply to:

**a.    Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

***

*See* Exh. I at p. 9; Exh. J at p. 10.

62.    The Umbrella Policies also contain an endorsement titled, "Excess Linebacker Public Officials And Employment Practices Liability Coverage," which provides, in relevant part, as follows:

**EXCESS LINEBACKER PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM OCCURRENCE COVERAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

The following is added to **Section I – Coverages – Coverage – Excess Linebacker Public Officials and Employment Practices Liability Coverage**

**1.    Insuring Agreement**

**a.**    We will pay on your behalf, all sums and defense expenses you become legally obligated to pay as "damages" caused by a "wrongful act" to which the Linebacker Public Officials and

20

Employment Practices Liability – Occurrence Coverage policy listed in the "underlying insurance" applies. We will pay up to the Limit of Insurance shown in the Declarations of the Commercial Liability Umbrella Coverage Part in excess of the Limits of Liability provided by the Linebacker Public Officials and Employment Practices Liability – Occurrence Coverage policy.

**b.**     The insurance provided by this endorsement will follow the Section I – Coverages and Section II – Who Is An Insured terms of the Linebacker Public Officials and Employment Practices Liability – Occurrence Coverage policy listed as "underlying insurance". The coverage provided under this endorsement will not be broader than the coverage provided in the Linebacker Public Officials and Employment Practices Liability – Occurrence Coverage listed in the "underlying insurance".

\*\*\*

**3.     Conditions and Definitions**

The Conditions and Definitions in the Linebacker Public Officials and Employment Practices Liability – Occurrence Coverage listed in the "underlying insurance" are applicable. Any inconsistencies in this policy with the "underlying insurance" will be amended to conform to the Linebacker Public Officials and Employment Practices Liability – Occurrence Coverage listed in the "underlying insurance".

\*\*\*

(hereinafter, the "Excess Linebacker Coverage Endorsement").

*See* Exh. I at p. 52; Exh. J at p. 47.

63.     The 19-20 Umbrella Policy contains an endorsement titled, "Governmental Subdivision Hazards Restrictive Endorsement" that provides, in relevant part, as follows:

**GOVERNMENTAL SUBDIVISION HAZARDS RESTRICTIVE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

**I.**     This Policy does not apply to:

21

**E.**     Any actual or alleged damages or diminution of property values that arise from your exercising or failing to exercise your power of eminent domain including:

**(1)**     Condemnation proceedings;

**(2)**     The exercising of duties in a land use regulatory capacity (zoning, permitting, inverse condemnation, etc.)

(hereinafter, the "Governmental Hazards Endorsement").

*See* Exh. I at p. 45.

## COUNT I – DECLARATORY JUDGMENT
### (The CGL Policies)

64.     Plaintiffs incorporate, adopt and re-allege the allegations in paragraphs 1 through 63 of its Complaint for Declaratory Judgment for paragraph 64 of Count I, as if fully set forth herein.

65.     Plaintiffs have and had no duty to defend or indemnify Peninsula Township under the CGL Policies for the claims asserted against the Township in the Underlying Lawsuit and/or the damages awarded against the Township in the resulting Judgment for the following reasons:

a.     The claims asserted against Peninsula Township in the Underlying Lawsuit do not consist of claims for or because of "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the CGL Policies;

b.     The damages awarded against Peninsula Township in the Judgment are not damages because of "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the CGL Policies;

c.     Even if the Underlying Lawsuit and resulting Judgment satisfied the Insuring Agreement of the CGL Policies, which they do not, there is no coverage for damages that occurred prior to or outside the policy periods of the CGL Policies;

d.     Even if the Underlying Lawsuit and resulting Judgment satisfied the Insuring Agreement of the CGL Policies, which they do not, Peninsula Township knew of those claims and/or damages prior to inception of the

CGL Policies, and thus, section b.(3) of the Insuring Agreement bars coverage;

e. Even if the Underlying Lawsuit and resulting Judgment satisfied the Insuring Agreement of the CGL Policies, which they do not, those claims and damages constitute a "known loss" and/or a "loss-in-progress" under the CGL Policies and/or common law, and therefore, are barred from coverage; and

f. Even if the Underlying Lawsuit and resulting Judgment satisfied the Insuring Agreement of the CGL Policies, which they do not, Exclusion 2.a. bars coverage.

66.    An actual controversy exists between Plaintiffs and Defendants and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liability of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, EMCASCO Insurance Company, respectfully prays this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the CGL Policies;

b. Find and declare that Plaintiffs have and had no duty under the CGL Policies to defend and/or indemnify Peninsula Township in connection with the Underlying Lawsuit or resulting Judgment; and

c. Grant Plaintiffs such other and further relief that the Court deems proper and just under the facts and circumstances.

## COUNT II – DECLARATORY JUDGMENT
### (The Linebacker Policies)

67.    Plaintiffs incorporate, adopt and re-allege the allegations in paragraphs 1 through 66 of its Complaint for Declaratory Judgment for paragraph 67 of Count II, as if fully set forth herein.

68.    Plaintiffs have and had no duty to defend or indemnify Peninsula Township under the Linebacker Policies for the claims asserted against the Township in the Underlying Lawsuit and/or the resulting Judgment for the following reasons:

a.    The Underlying Lawsuit and/or resulting Judgment do not allege a "public official's wrongful act" as defined by the Linebacker Policies;

b.    Even if the Township's conduct constitutes a "public official's wrongful act," which it may not, the conduct alleged consists of a single "wrongful act" or a series of related "wrongful acts" and, therefore, are deemed one "wrongful act," and thus, deemed to have occurred at the time of the first "wrongful act," which was prior to the inception of the Linebacker Policies, respectively.

Accordingly, all of the Township's alleged "wrongful acts" are deemed to have occurred prior to inception of the Linebacker Policies, respectively, and therefore fail to satisfy the Insuring Agreement of the Linebacker Policies;

c.    Even if the Township's conduct constitutes a "public official's wrongful act," which it may not, the Township knew of the claims and/or damages related to its alleged conduct prior to the inception of the Linebacker Policies, and therefore section 2.b of the Insuring Agreement bars coverage;

d.    Even if the Township's conduct constitutes a "public official's wrongful act," which it may not, those claims and damages constitute a "known loss" and/or a "loss-in-progress" under the Linebacker Policies and/or common law, and therefore, are barred from coverage; and

e.    Even if the Underlying Lawsuit and/or resulting Judgment satisfied the Insuring Agreement of the Linebacker Policies, which they do not, Exclusion 5.l bars coverage.

69.    An actual controversy exists between Plaintiffs and Defendants and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liability of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Employers Mutual Casualty Company, respectfully prays this Honorable Court:

    a.  Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Linebacker Policies;

    b.  Find and declare that Plaintiffs have and had no duty under the Linebacker Policies to defend and/or indemnify Peninsula Township in connection with the Underlying Lawsuit or resulting Judgment; and

    c.  Grant Plaintiffs such other and further relief that the Court deems proper and just under the facts and circumstances.

## COUNT III – DECLARATORY JUDGMENT
### (The Umbrella Policies)

70.    Plaintiffs incorporate, adopt and re-allege the allegations in paragraphs 1 through 69 of its Complaint for Declaratory Judgment for paragraph 70 of Count III, as if fully set forth herein.

71.    Plaintiffs have and had no duty to defend or indemnify Peninsula Township under the Umbrella Policies for the claims asserted in the Underlying Lawsuit and/or the resulting Judgment for the following reasons:

    a.  The claims asserted against Peninsula Township in the Underlying Lawsuit do not consist of claims for or because of "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the Umbrella Polices;

    b.  The damages awarded against Peninsula Township in the Judgment are not damages because of "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the Umbrella Policies;

    c.  Even if the Underlying Lawsuit and resulting Judgment satisfied the Insuring Agreement of the Umbrella Policies, which they do not, there is no coverage for damages that occurred prior to or outside the policy periods of the Umbrella Policies;

    d.  Even if the Underlying Lawsuit and resulting Judgment satisfied the Insuring Agreement of the Umbrella Policies, which they do not, the Township knew of those claims and/or damages prior to inception of the Umbrella Policies, and thus, section b.(3) of the Insuring Agreement bars coverage;

e.  Even if the Underlying Lawsuit and resulting Judgment satisfied the Insuring Agreement of the Umbrella Policies, which they do not, those claims and damages constitute a "known loss" and/or a "loss-in-progress" under the Umbrella Policies and/or common law, and therefore, are barred from coverage;

f.  Even if the Underlying Lawsuit and resulting Judgment satisfied the Insuring Agreement of the Umbrella Policies, which they do not, Exclusion 2.a. bars coverage;

g.  There is no coverage available to the Township for the claims and damages in the Underlying Lawsuit under the Excess Linebacker Coverage Endorsement of the Umbrella Policies for the same reasons there is no coverage for the Township under the Linebacker Policies set forth in Count II; and

h.  Even if the Underlying Lawsuit and resulting judgment satisfied the Insuring Agreement of the 19-20 Umbrella Policy, which they do not, Exclusion E of the Governmental Hazards Endorsement of the 19-20 Umbrella Policy bars coverage.

72.  An actual controversy exists between Plaintiffs and Defendants and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liability of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Employers Mutual Casualty Company, respectfully prays this Honorable Court:

a.  Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Umbrella Policies;

b.  Find and declare that Plaintiffs have and had no duty under the Umbrella Policies to defend and/or indemnify Peninsula Township in connection with the Underlying Lawsuit or resulting Judgment; and

c.  Grant Plaintiffs such other and further relief that the Court deems proper and just under the facts and circumstances.

Dated this 12th day of September, 2025.

Respectfully submitted,

*/s/ Jason M. Taylor*

_____

One of the Attorneys for EMCASCO
Insurance Company and Employers Mutual
Casualty Company

Jason M. Taylor (P85247)
jtaylor@tlsslaw.com
TRAUB LIEBERMAN
STRAUS & SHREWSBERRY, LLP
71 S. Wacker Dr., Suite 2110
Chicago, Illinois 60603
312.332.3900
312.332.3908 (f)